IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| POPULUS FINANCIAL GROUP, INC. D/B/A ACE CASH EXPRESS, | § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | C.A. No. _____ |
| FIDELITY INFORMATION SERVICES, LLC, | | |
| Defendant. | | |

## COMPLAINT

Plaintiff Populus Financial Group, Inc. d/b/a ACE Cash Express ("Populus") files this Complaint against Fidelity Information Services, LLC ("FIS"), and states:

## I. INTRODUCTION

Populus is a financial institution providing a number of financial services, including bill pay services, wire transfer services, ATM services, debit card services, money orders, and also check cashing services and access to short-term loans. FIS markets itself as providing information-based technology solutions and processing services to financial institutions. In 2016, Populus and FIS entered into negotiations for a contract whereby FIS would provide the switching and routing services for Populus's electronic funds transfer ("EFT") transactions (as defined below, the "Services"). Essentially, Populus was seeking to engage FIS to process, route, clear, and settle its ATM and debit card transactions for its customers through certain electronic funds transfer networks that are owned by third parties, like NYCE, VISA, MasterCard and Discover.

The parties negotiated an agreement in late 2016, and FIS circulated a finalized draft Information Technology Services Agreement and Order Form (collectively, the "Agreement"). The Agreement circulated by FIS did not include any "Pricing Attachment." Having finally negotiated all terms of the Agreement, including agreeing to a flat fee per completed transaction, Populus executed the Agreement. Although the Agreement contains a reference to a "Pricing Attachment," FIS never provided it or its contents to Populus while the parties negotiated the Agreement's terms. Instead, after Populus executed the Agreement, FIS unilaterally sent Populus a "Pricing Attachment" and requested that Populus re-execute the agreement, this time including the pricing attachment, via DocuSign. Populus did not do so. And in fact, FIS indicated execution via DocuSign was unnecessary.

After approximately one year of charging Populus for actual usage (although a disagreement arose regarding the meaning of "transaction"), in 2019 FIS attempted to unilaterally charge Populus excessive fees that were not agreed to in 2016, including a monthly minimum charge apparently based on the unagreed "Pricing Attachment." Despite repeated notice and demand, FIS has refused to comply with the terms of the parties' Agreement, necessitating the filing of this lawsuit.

## II. PARTIES

1. **Populus.** Populus is a Texas corporation with its principal place of business in Irving, Texas.

2. **FIS.** FIS is an Arkansas limited liability company with its principal place of business in Jacksonville, Florida, and may be served through its registered agent, CT

Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324. On information and belief, FIS has one member, Fidelity National Information Services, Inc., which is a Georgia corporation with a principal place of business in Florida.

### III. JURISDICTION AND VENUE

3. **Jurisdiction.** This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332. Populus is a citizen of Texas, and FIS is a citizen of Georgia and Florida, for diversity purposes. Thus, Populus and FIS are citizens of different states, and as set forth below, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. **Venue.** This district is an appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) and because the parties contractually agreed to venue in this district.

### IV. BACKGROUND FACTS

A. **Populus's Business**

5. Populus is a financial institution providing a number of financial services, including bill pay services, wire transfer services, ATM services, debit card services, money orders, and also check cashing services and access to short-term loans.

B. **FIS's Business**

6. FIS markets itself as providing information-based technology solutions and processing services to financial institutions.

C. **The Contract Negotiations**

7. In 2016, Populus and FIS entered into negotiations for an agreement whereby FIS would provide the switching and routing services for Populus's EFT transactions.

Essentially, Populus was seeking to engage FIS to process, route, clear, and settle its ATM and debit card transactions through certain electronic funds transfer networks that are owned by third parties, like NYCE, VISA, MasterCard and Discover (*i.e.*, the "Services").

8. During the negotiations, the parties negotiated and ultimately agreed on a processing fee of $0.54/completed transaction. However, FIS had requested, among other things, that it be Populus's exclusive provider for the Services and to be a primary supplier (as opposed to a secondary supplier). Populus did not agree to this, and exclusivity was specifically disclaimed in the Order Form. Following these negotiations, FIS then forwarded Populus a draft of the Agreement on November 10, 2016, which did not include a "Pricing Attachment" referenced therein.

9. For the next month, the parties exchanged redlines to the Agreement, but at no time did FIS present Populus the "Pricing Attachment" referenced therein.

### D. The Agreement

10. On December 15, 2016, FIS sent Populus a final version of the Agreement for execution, which did not include the "Pricing Attachment." That same day, Populus executed the Agreement without the "Pricing Attachment" attached and returned it to FIS via email.

11. After Populus executed the Agreement, FIS then submitted a package of documents to Populus to execute via DocuSign. Populus confirmed with FIS that the executed copy of the Agreement Populus submitted to FIS was accepted and that Populus did not need to complete the DocuSign package. Populus did not execute the amended package of documents or the "Pricing Attachment," which FIS apparently subsequently

executed via DocuSign on December 21, 2016, with the "Pricing Attachment" dated December 15, 2016 included for the first time.

12.     Despite the fact that only FIS had executed the DocuSign version of the Agreement that included the "Pricing Attachment," FIS did not raise the issue with Populus or discuss the terms of the "Pricing Attachment" with Populus at any time.  Instead, FIS forwarded an executed Agreement to Populus on December 21, 2016, which included the "Pricing Attachment" executed by FIS, but not Populus, for the first time.

E.     **FIS Invoices Populus for the Services and then for Unagreed Monthly Minimums**

13.    After the Agreement was executed, FIS began to invoice Populus for the Services consistent with the parties' Agreement for more than a year.  However, FIS then sent Populus invoice number 1003127993 (the "Disputed Invoice") dated August 16, 2019 in the amount of $230,920.50, which purported to charge Populus the difference between the fees under the Agreement and monthly minimum fees FIS alleged for the first time were due under the unagreed Pricing Attachment.

F.     **Populus Objects to the Terms of the Pricing Attachment.**

14.    The Disputed Invoice was not paid by Populus.  Instead, Populus objected to the payment of the Disputed Invoice and the "Pricing Attachment," including by letters dated September 10, 2019 and October 11, 2019.  In those letters, Populus expressly informed FIS that the "Pricing Attachment" was not part of the Agreement and that it had not agreed to pay such fees.  Moreover, Populus objected to paying the uncompleted

transactions charged by FIS for the Services, which were not set forth in the Agreement or the "Pricing Attachment."

15. To date, despite repeated notice and demand, FIS has failed and refused, and continues to fail and refuse, to abide by the Agreement and has insisted that Populus pay the Disputed Invoice, the monthly minimum set forth in the "Pricing Agreement," as well as for uncompleted transactions which were not agreed to by Populus in the Agreement. Specifically, Populus has also refused to pay FIS for declined transactions and balance inquiry transactions that FIS has allegedly processed (at $0.54/each), which were never agreed to by Populus and are not provided for under the terms of the Agreement.

## V. CAUSES OF ACTION

16. **Declaratory Judgment.** Pursuant to 28 U.S.C. § 2201, Populus requests the Court to grant declaratory judgment relief, and to declare the rights of the parties under the Agreement. Populus seeks an adjudication that it has no obligation or liability under the Agreement to pay FIS: (a) any of the fees set forth in the "Pricing Attachment," including monthly minimums, which are not part of the Agreement; (b) for any uncompleted transactions, including declined transactions and balance inquiries, which are not provided for in the Agreement; and (c) for any failure to not exclusively use FIS for the Services. Populus also seeks to recover its reasonable attorneys' fees in seeking such relief.

17. **Alternative Rescission Claim.** Alternatively, Populus seeks the equitable remedy of rescission, or voidance, of the Agreement as it was entered into under a mutual mistake of fact and is therefore voidable and subject to rescission under applicable New York law. Specifically, at the time the Agreement was executed, Populus understood that

the only agreed pricing term for the Services was $0.54/completed transaction and that the "Pricing Attachment" was not part of the parties' Agreement. Conversely, on information and belief, FIS assumed the "Pricing Attachment" was part of the Agreement. Therefore, this mutual mistake existed at the time the Agreement was executed, is substantial, and goes to the heart of the Agreement. Accordingly, in the alternative, this mutual mistake warrants rescission, or voidance, of the Agreement. Therefore, Populus alternatively seeks the rescission, or voidance, of the Agreement.

## VI. PRAYER FOR RELIEF

18. **Prayer.** Populus requests the following relief:

    (a) That FIS be served with summons and the complaint and be required to answer in the time and manner prescribed by law;

    (b) That the Court grant the declaratory judgment requested above;

    (c) Alternatively, that the Court grant the equitable relief requested above; and

    (d) That Populus have such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Dated: June 2, 2020

Respectfully submitted,

By: _____
L. Johnson Sarber III
Florida Bar No. 104116
jsarber@carrallison.com
**CARR ALLISON**
The Greenleaf and Crosby Building
208 North Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 328-6457 – telephone
(904) 328-6473 – facsimile

and

Ryan K. McComber (*pro hac vice* to be filed)
Texas Bar No. 24041428
ryan.mccomber@figdav.com
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, TX 75202
(214) 939-2000 – telephone
(214) 939-2090 – facsimile

**ATTORNEYS FOR PLAINTIFF**